UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVID SPRAGUE, on behalf of <br> GEORGIA SPRAGUE, deceased, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 1:15-cv-214 <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, David Sprague, on behalf of Georgia Sprague, deceased, on August 14, 2015.[1]  For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, David Sprague, on behalf of Georgia Sprague, deceased, filed an application for Disability Insurance Benefits on February 23, 2012, alleging a disability onset date of June 15, 2010. (Tr. 21).  The Disability Determination Bureau denied Sprague's application on May 22, 2012, and again upon reconsideration on August 7, 2012. (Tr. 21). Sprague subsequently filed a timely request for a hearing on August 31, 2012. (Tr. 21).  A hearing was held on October 17, 2013, before Administrative Law Judge (ALJ) Patricia Melvin,

---

[1]      On December 11, 2015, this case was reassigned to Magistrate Judge Susan L. Collins upon the parties' consent under 28 U.S.C. § 636(c), and then was reassigned to Magistrate Judge Andrew P. Rodovich. On August 5, 2016, the court ordered the parties to file any objection to Magistrate Judge Rodovich conducting all further proceedings in this case. Because neither party filed an objection, this court finds that the parties voluntarily consent to Magistrate Judge Rodovich under 28 U.S.C. § 636(c).

and the ALJ issued an unfavorable decision on March 17, 2014. (Tr. 21–31). Vocational Expert (VE) Robert S. Barkhaus, Sprague, and Sprague's husband, David Sprague, testified at the hearing. (Tr. 21, 29). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

The ALJ found that Sprague met the insured status requirements of the Social Security Act through December 31, 2015. (Tr. 23). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Sprague had not engaged in substantial gainful activity since June 15, 2010, the alleged onset date. (Tr. 23). At step two, the ALJ determined that Sprague had the following severe impairments: fibromyalgia and degenerative disc disease of the lumbar spine. (Tr. 23). The record contains evidence of other impairments present during the relevant period, but they did not result in functional limitations. (Tr. 23). An examination was completed by Michele Thurston, M.D. in May 2010. (Tr. 24). She assessed Sprague with uncontrolled diabetes. (Tr. 24). After visits to Dr. Thurston and hospitalization, Sprague developed better monitoring techniques by her May 2012 consultative examination with H. M. Bacchus Jr., M.D. (Tr. 24). Dr. Bacchus' normal sensory results were countered by the diagnosis of Jeremy Grogg, M.D. of neuropathy and paresthesia. (Tr. 24). He found neuropathy in the fourth and fifth digits of both hands, however, her hemoglobin A1c had declined to 9. (Tr. 24). Dr. Grogg described Sprague's prognosis as "excellent," and no limitations existed with respect to diabetes. (Tr. 24).

The ALJ indicated that Sprague's chronic obstructive physical pulmonary disease and abnormal liver tests were non-severe physical impairments. (Tr. 24). Also, the ALJ concluded that Sprague's mental impairments of depression and anxiety caused a minimal limitation on her ability to perform basic mental work activities and were nonsevere. (Tr. 24). Henry Martin,

2

Ph.D. conducted memory recall and serial 7s tests and diagnosed Sprague with adjustment disorder with mixed emotional features. (Tr. 24). Dr. Martin provided a global assessment of functioning (GAF) score of 45, indicating serious symptoms, which the ALJ afforded little weight because the score was not standardized and only provided a brief glimpse into functioning. (Tr. 25). The ALJ also indicated that Sprague's minimal treatment for the mental health impairments supported the state agency opinion that the impairments were not severe. (Tr. 25).

At step three, the ALJ concluded that Sprague did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 26). Specifically, she found that Sprague did not meet Listing 1.04, severe lumbar degenerative disc disease. (Tr. 26).

The ALJ then assessed Sprague's residual functional capacity as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; and she can occasionally balance, stoop, kneel, crouch, and crawl.

(Tr. 26). The ALJ explained that in considering Sprague's symptoms, she followed a two-step process. (Tr. 26). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by medically acceptable clinical and laboratory diagnostic techniques that reasonably could be expected to produce Sprague's pain or other symptoms. (Tr. 26). Then, she evaluated the intensity, persistence, or functionality limiting effects of pain or other symptoms to determine the extent to which they limited Sprague's functioning. (Tr. 26).

Sprague alleged that she has diabetic-related neuropathy and could not work due to back pain that radiated into her legs. (Tr. 26). As a result, she could not sit more than 30 minutes,

3

stand more than 20 minutes, walk more than 2 blocks, or lift more than 10 pounds. (Tr. 26). Sprague indicated she was unstable when she walked causing her to fall once a month, therefore, she used a cane that was not prescribed for her by a doctor. (Tr. 26-27). Sprague testified that her diabetes interfered with her ability to talk, walk, and grip items. (Tr. 27). She had been prescribed Levemir, Novolog, and Metformin for diabetes; Nabumetone, Oxycodone, Zanaflex, Vicodin, and Soma for pain; and Cymbalta for mental impairments. (Tr. 27). The medications only eased, but did not eliminate, the impairments and caused her to sleep approximately half of each day. (Tr. 27).

In February of 2010, prior to the alleged onset of disability date, Sprague presented to pain specialist William Hedrick, M.D. diagnoses of knee osteoarthritis, right rotator cuff tendinitis, lumbar facet arthropathy, sacroiliitis, fibromyalgia, cervicalgia, and lumbar radiculopathy. (Tr. 27). Dr. Hedrick focused on the lumbar discomfort and provided an epidural steroid injection at L4-L5 and L5-S1. (Tr. 27). He repeated this procedure in April, however, the pain continued through her June 2010 alleged onset date. (Tr. 27). Three months after the April injection, Sprague overdosed by taking 88 Percocets and 30 Robaxins in a single week. (Tr. 27). Sprague revisited Dr. Hedrick when she was short on Percocets. (Tr. 27). Dr. Hedrick entrusted the medications to her husband and recommended substance abuse treatment. (Tr. 27). Sprague's lack of insurance interfered with her ability to receive injections, but Dr. Hedrick's follow-up reports indicated the prescriptions were working well. (Tr. 27).

Sprague received another epidural injection at L4-L5 and L5-S1 from Dr. Hedrick in September of 2011. (Tr. 27). It provided a 60 percent improvement in her pain, however, the pain returned by November. (Tr. 27). Dr. Hedrick found that Sprague had cervical facet tenderness, myofascial tenderness, decreased range of motion, and lumbar and knee joint

4

tenderness. (Tr. 27). Dr. Hedrick provided samples of Flector patches and Voltaren gel, yet the pain persisted. (Tr. 27).

In April 2012, Sprague went to the emergency room with low back pain. (Tr. 27). Emergency physician Pablo Perez, M.D. found tenderness to palpation in the lumbar area, so he administered Toradol and Norflex. (Tr. 27). At discharge, he prescribed Vicodin, Dolobid, and Soma. (Tr. 27). At a May 2012 consultative examination, Dr. Bacchus described Sprague as having difficulty getting on and off the exam table, reduced range of motion throughout all testing areas, and reduced 4 out of 5 muscle strength in all extremities. (Tr. 27-28). However, Sprague's gait was stable, and she did not need an assistive device. (Tr. 28). He confirmed the prior diagnoses of fibromyalgia, osteoarthritis, and a history of chronic back pain. (Tr. 28). Also in May, Sprague saw emergency room physician David Reed, M.D. for lumbar pain. (Tr. 28). An image of the spine showed mild lumbar degenerative changes and L1-L2 disc narrowing. (Tr. 28).

Treating physician Monica Reddy, M.D., in October of 2012 found that Sprague's range of motion had improved since the May 2012 consultative examination with Dr. Bacchus, yet she still had restricted lumbar flexion. (Tr. 28). Dr. Reddy took x-rays of Sprague's feet that showed degenerative changes of the first metatarsophalangeal joints, hallux valgus deformities, and heel spurs. (Tr. 28). Sprague attended physical therapy with Laura Smart, PT who provided a transcutaneous electrical nerve stimulation unit that helped obtain pain relief. (Tr. 28).

Updated magnetic resonance images were taken in February of 2013, which showed L3-L4 disc desiccation with a bulge, as well as central canal and foraminal narrowing. (Tr. 28). At L4-L5, Sprague had mild facet degeneration, mild foraminal narrowing, minimal central canal narrowing, and at L5-S1 mild facet degeneration without significant narrowing. (Tr. 28). Pain

5

specialist, Jon Karl M.D., diagnosed Sprague with L4 radiculitis secondary to multilevel lumbar degenerative disc disease and spondylosis. (Tr. 28). In response, he provided Sprague an epidural steroid injection at L4-L5 and in April and May medial branch blocks at L2, L3, L4, and L5. (Tr. 28). In September, Sprague returned to Dr. Karl for hip joint injections, while Dr. Reddy noted that Sprague had a normal range of motion. (Tr. 28).

The ALJ found Sprague's alleged symptoms to be reasonably expected, however, statements made concerning the intensity, persistence, and limiting effects were not entirely credible. (Tr. 28). The ALJ found the RFC was supported by Sprague's work history, treatment record, and activities of daily living. (Tr. 28). Specifically, the ALJ noted that Sprague testified to losing her job due to high blood sugar levels, but her pursuit of employment was suggestive that she viewed herself capable of performing substantially gainful activity. (Tr. 28). She also testified to an inability to afford treatment, but she had the ability to travel from Indiana to Arizona. (Tr. 29). The ALJ noted other inconsistent statements. (Tr. 29).

The state agency consultants concluded that Sprague could perform light work from a review of the record, Sprague's ability to walk unassisted by a device, and normal range of motion testing performed by treating physician Dr. Reddy. (Tr. 29). Dr. Bacchus' opinion that Sprague could work full time up to six hours a day received little weight by the ALJ because his findings of restricted range of motion in all joints was inconsistent with Dr. Reddy's full range of motion report. (Tr. 29). Dr. Karl's opinion received little weight because his remarks were conclusory, did not provide function-by-function analysis applicable to the RFC, and were unpersuasive in comparison to Dr. Reddy's reports. (Tr. 29).

The ALJ gave some weight to Sprague's husband's testimony. (Tr. 29). He testified that Sprague would begin chores but needed his assistance to complete them, that she would drop

6

items, and that she stumbled when she walked. (Tr. 29). The ALJ determined that based upon his relationship with Sprague his testimony did not outweigh medical reports. (Tr. 29-30).

At step four, the ALJ found that Sprague could not perform her past relevant work. (Tr. 30). However, considering Sprague's age, education, work experience, and residual functional capacity, the ALJ concluded that there were jobs in the national economy that she could perform, including electrical accessories assembler (4,000 jobs locally and 180,000 jobs nationally), small products assembler (50,000 jobs locally and 900,000 jobs nationally), and cleaner-maid (14,000 jobs locally and 800,000 nationally). (Tr. 30-31).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However,

7

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant

work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f)**.

First, Sprague has argued that the ALJ improperly evaluated the opinion of treating pain management physician, Dr. Jon Karl. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate her reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as she minimally articulates her reasons for crediting or rejecting evidence

9

of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. ***Moore v. Colvin***, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing ***Similia v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded to a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician also may "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* ***Punzio***, 630 F.3d at 713.

Sprague has argued that the ALJ improperly evaluated Dr. Karl's opinions. Dr. Karl's diagnoses included osteoarthritis, gout, fibromyalgia, lumbar degenerative disc disease, lumbar spondylosis, myalgia, and degenerative osteoarthritis in both hips. (Tr. 671). He found Sprague's limitations included chronic pain, fatigue, numbness in her lower legs, and neurological symptoms. Dr. Karl's opined that Sprague could work only twenty hours a week due to her constant pain and neurological symptoms and that physical exertion would exacerbate her condition causing extreme pain. (Tr. 673). Dr. Karl ordered an MRI of the lumbar spine, which showed primarily bilateral L4 radiculitis secondary to multi-level lumbar degenerative disc disease as well as spondylosis, and multiple levels of foraminal stenosis.

The ALJ assigned little weight to Dr. Karl's opinion because his remarks were reserved for the Commissioner, conclusory, and failed to provide a function-by-function analysis. (Tr. 29). Also, the ALJ found Dr. Karl's opinion unpersuasive in light of Dr. Reddy's reports. (Tr. 29). Dr. Reddy examined Sprague twice. At the first exam, she concluded that Sprague had a

normal range of motion with the exception of restricted lumbar flexion. (Tr. 28). At the second exam, Sprague displayed a normal range of motion. (Tr. 28).

The Commissioner has indicated that the ALJ properly distinguished Dr. Karl's opinion because it invaded an issue reserved to the Commissioner, therefore, no special significance was assigned to it. However, an ALJ must "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear...." **SSR 96–5p**, 1996 WL 374183, at *2 (1996). Also, the governing regulations do not require a function-by-function analysis as part of Dr. Karl's opinion, therefore, dismissing a treating physician's opinion for that reason was inappropriate. *See* ***Virden v. Colvin***, 2015 WL 5598810, at *9 (C.D. Ill. 2015).

The Commissioner contends that the ALJ limited the opinion of Dr. Karl based on more than Dr. Reddy's examinations. The ALJ noted the findings of two State agency medical consultants, the opinion of a treating endocrinologist, and the examination findings of a consultative examiner. (Tr. 29). The Commissioner contends that due to the conflicting findings it was proper not to assign controlling weight to Dr. Karl. The Commissioner has indicated that the ALJ sufficiently considered all the regulatory factors outlined in **20 C.F.R. 404.1527(c)** and was not required to set aside compelling evidence because Dr. Karl was a specialist.

The ALJ assigned great weight to the State agency consultants, whose opinion mirrored the ALJ's RFC findings. (Tr. 29). The consultants formed their opinion based on a review of the record. (Tr. 29). The ALJ only assigned some weight to consultative examiner Dr. Bacchus because his report of restricted range of motion in all joints was inconsistent with Dr. Reddy.

11

(Tr. 29). The ALJ gave the greatest weight to the opinion of Dr. Grogg, an endocrinologist, whose findings were strictly related to Sprague's nonsevere diabetes diagnosis.

Although the Commissioner has provided opinions from other medical sources, the ALJ failed to offer a "good reasons" for discounting treating physician, Dr. Karl's, opinion. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). Even if there is evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ rationally to articulate the ground for her decisions and confine the court's review to reasons supplied by the ALJ. *Steele v. Barnhart,* 290 F.3d 936, 941, (7th Cir. 2002).

In discounting Dr. Karl's opinion, the ALJ failed to articulate substantial evidence in the record that was inconsistent with Dr. Karl's opinion. At a minimum, the ALJ had to articulate her analysis of the evidence creating an accurate and logical bridge between the evidence and the result. *See Vincent v. Asture,* 752 F.Supp.2d 914, 925 (N.D. Ind. 2010). The ALJ predominantly relied on the opinion of Dr. Reddy, who only examined Sprague twice. The ALJ's evidence to support her decision consisted of a September 2013 examination. At that examination, Sprague displayed a regular range of motion. (Tr. 28). The ALJ failed to cite to evidence in the record that contradicted Dr. Karl's diagnosis and limitations. Medical evidence may be discounted if it is internally inconsistent or inconsistent with substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). The ALJ may provide good cause to deny controlling weight to a treating physician's opinion, however, the ALJ must adequately articulate her reasoning. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). The ALJ failed to support her opinion with evidence in the record. On remand, the ALJ should reconsider Dr. Karl's opinion.

12

Next, Sprague has argued that the ALJ's credibility finding was patently wrong. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds her credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and

13

statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not disregard an individual's statements about symptoms solely based on objective medical evidence. SSR 16-3p, at *5[2]; *see* **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]claimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be

---

[2] The Social Security Administration updated its guidance about evaluating a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). SSR 16-3p superseded SSR 96-7p and removed the term "credibility" from the Administration's policies. SSR 16-3p at *1. The new policy clarifies that an ALJ should not examine a claimant's character similar to an adversarial proceeding when evaluating the claimant's subjective symptoms. SSR 16-3p at *1. Although SSR 16-3p post-dates the ALJ hearing in this case, a regulation that clarifies rather than changes existing law is appropriate on appeal. **Pope v. Shalala**, 998 F.2d 473, 482–83 (7th Cir. 1993), *overruled on other grounds by* **Johnson v. Apfel**, 189 F.3d 561 (7th Cir. 1999). Because SSR 16-3p clarifies the Administration's policies, this court will evaluate the ALJ's findings under the Administration's new guidance. *See* **Roper v. Colvin**, 2016 WL 3940035, at *3 (N.D. Ill. July 21, 2016) (finding it appropriate to consider the new regulation on appeal).

14

> considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, her analysis of the evidence). She must "build an accurate and logical bridge from the evidence to her conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations, is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates*, 736 F.3d at 1099.

Sprague has argued that the ALJ failed to evaluate her symptom testimony properly. The ALJ found that Sprague's medically determinable impairments could cause the symptoms, however, the statements about intensity, persistence, and limiting effects were not credible. (Tr.

28). The ALJ found that Sprague's work history, treatment record, and activities of daily living supported the RFC. (Tr. 28). However, the ALJ failed to build an accurate and logical bridge from the evidence to her credibility finding. *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ noted Sprague's testimony about losing her job in June of 2010 due to high blood sugar levels that caused her to fall asleep. (Tr. 28). Sprague argued that the ALJ failed to consider the additional reasons she articulated for leaving her job, like chronic fatigue and absences due to medical issues. However, the ALJ addressed Sprague's other impairments that prevented her from working.

Next, the ALJ indicated that Sprague's pursuit of employment was not determinative but was suggestive that she was capable of work. (Tr. 28). Sprague argued the ALJ erred because the desire to work was not evidence that she could work. A claimant's desire to work is not inconsistent with her inability to work because of a disability. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *See also Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (claimant's desire to work, but inability to find work, is "consistent with her wanting to lead a normal life yet being unable to land a job because she's disabled from gainful employment"); *Jones v. Shalala,* 21 F.3d 191, 192 (7th Cir. 1994). Therefore, the ALJ cannot discredit Sprague for a mere desire to work.

The ALJ commented that the medical record indicated that Sprague was unable to pay for treatment. However, her ability to afford two packs of cigarettes a day affected her credibility. (Tr. 29). Sprague has claimed that the ALJ failed to inquire about her ability to afford treatment as required by SSR 96-7p. The ALJ failed to inquire at the hearing why Sprague could afford to smoke two packs of cigarettes a day, but had difficult paying for medical treatment. *See Craft v.*

16

*Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting **SSR 96-7p**). The ALJ cannot assume without foundation that the cost of cigarettes would cover Sprague's ability to pay for medical treatment. *See* **McElhaney v. Astrue**, No. C10-5387, 2011 WL 1045760, at *6.

Also, the ALJ discredited Sprague's testimony because she traveled to Arizona, which would require her to sit longer than thirty minutes. (Tr. 29). The Commissioner contends that the ALJ was not required to seek an explanation from Sprague about her long-distance vacation from Indiana to Arizona. Therefore, the ALJ reasonably could discount Sprague's testimony that she could sit for only thirty minutes. The nurse practitioner's notes did not include a means of transportation, but the ALJ found any trip from Indiana to Arizona required an ability to sit for more than thirty minutes. The ALJ failed to show how Sprague's vacation was inconsistent with her claims regarding her physical limitations. *See* **Murphy v. Colvin,** 759 F.3d 811, 817 (7th Cir. 2014). The ALJ cited no evidence to support this assertion. Instead of making assumptions, the ALJ should have inquired into these issues at the hearing. There is a possibility that Sprague was able to get up or shift positions during the trip.

Sprague's testimony was more limited than her prior function report, therefore, the ALJ indicated it was proper to hold Sprague's inconsistent statements about her ability to perform daily activities against her credibility. The ALJ noted Sprague's ability to walk without an assistive device and normal range of motion testing. (Tr. 29). Sprague testified that she used a cane at times, but one never was prescribed for her. *See* **Parker v. Astrue**, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription.").

The ALJ articulated that multiple records demonstrated Sprague's ability to walk without an assistive device.

Sprague has indicated that the ALJ cherry-picked things about her daily living activities that supported her opinion and failed to consider the observations and opinions of medical professionals that supported her credibility. The evidence placed limitations on the Sprague's ability to perform daily activities. The ALJ failed to note other testimony from Sprague like her inability to sleep because of the pain, get dressed by herself on certain days, the length of time required to do laundry, and her inability to move off the couch on certain days because of the pain. The ALJ is not permitted to cherry-pick from the evidence and select only those facts which support her conclusion. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (holding that the ALJ's apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermine it, is an error in analysis that requires reversal).

The Commissioner indicated that the ALJ chose to discount the observations of the Social Security employee in favor of more compelling medical evidence and opinions. However, the ALJ never made this argument. Moreover, any error regarding the observations of the Social Claims representative was harmless. According to the errors cited above, and since the matter is being remanded on a different issue, the ALJ should provide more support for her credibility finding on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 5th day of January, 2017.

/s/ Andrew P. Rodovich
United States Magistrate Judge